Morphy, J.
The petitioner, James McGill, claims of the estate of the late Alexander Milne $1440. tie alleges that, on the 6th of November, 1840, F. F. Dorville, the dative testamentary executor of the estate, authorized and employed him to guard and take care of the extensive estate and possessions of the deceased, on the margin of lake Ponchartrain, called Milne-burg. That his duties consisted particularly in guarding several hundred acres of woodland belonging to the estate, from the depredations it was exposed to on account of its proximity to the *330 city. That he was also employed to prevent the carrying away of shells and sand from the shores of the lake, in front of said property, and to take care of the houses and buildings of the estate. That he began to render these services on the 6th of November, 1840, and continued faithfully to discharge them until the 6th of November, 1843. The petitioner alleges, that his services are reasonably worth $>40 per month, which, during that period, makes the sum of $1440, for which the estate is justly liable to him, &c. it appears that, on the 11th of January, 1836. the petitioner purchased a lot from the deceased at Milneburg, for $1100, payable three years thereafter, with legal interest, from the 14th of January, 1839, which lot, on the trial below, was appraised at $80, by one of the witnesses ; that the petitioner, as he alleges, engaged his services to the estate under the expectation that they would compensate, and go to pa3q the extravagant price at which the lot had been sold to him. When he was sued on his note in the Parish Court, he pleaded, as an offset, his alleged seryices to the estate ; but this plea was rejected on an exception being taken to the jurisdiction of the court, whereupon the present suit was brought to liquidate and settle his claim against the estate.
To show that he had been employed by the executor, the petitioner produced a paper signed by him on the 6th of November, 1840, wherein he is requested and authorized to take care of all the property belonging to the estate of Milne, and to prevent any person from digging sand on the same. A number of witnesses have testified as to the value of the property to be guarded, and the services rendered by the petitioner. They state that the woodland extended from five to six miles on the shore of the lake, and about three-quarters of a mile in depth, including the town of Milneburg, and a large tract of adjoining land, and that along its whole extent, there was a sand beach and many shell banks, all which property was exposed to depredation from the inhabitants of Milneburg and New Orleans. That, at various times, the plaintiff prevented a great many persons from cutting wood, and carrying off shells and sand from the property of the estate. That he corresponded from time to time with the executor, in relation to the business, denouncing to him all persons *331 who trespassed on the land, and that he once arrested and pat in jail one of the trespassers. The business of guarding this property is represented by the witnesses, as a troublesome and even a dangerous one, which involved the plaintiff in quarrels, and, on one occasion, his life is said to have been threatened by one of the persons who were cutting wood on the land. One wit' ness says, that he would have charged $50 per month for these services, and would not take one year of the trouble plaintiff had, for a lot like that he bought at Milneburg. On the other hand, Chalor, the clerk of the executor, the only witness present at any of the interviews which took place between the petitioner and the executor, says, that there was no agreement to pay anything to McGill; that Dorville had no idea of paying for his services : that he was in the habit of requesting all persons living at the lake, to inform him of any trespasses committed on the lands of the estate. That if a written authorization was given to McGill, it was because he called for it to avoid difficulties with persons who might dispute his authority to stop them. That as plaintiff was on friendly terms with the executor, and had been allowed for some time the use of a house and garden at Milneburg, and the privilege of cutting wood for his own use, the witness supposed that his services were given on the footing of friendly offices, and without any pecuniary consideration; and that it was only after-suit was brought against him on his note, that he, for the first time, set up a claim for compensation. In relation to the value of McGill’s services, this witness says, that if a man had been employed to render them, and had attended to nothing else, he might have been entitled to a salary of about thirty dollars per month ; but that a person living at Milneburg, who should have gone over the land once a month, and enjoyed the privileges accorded to McGill, would not be entitled to more than fifteen dollars per month. Upon the whole evidence, and in the absence of any positive proof that McGill had agreed to give his services to the estate gratuitously, the Judge below allowed him the last mentioned sum. In a case like the present, depending entirely on the testimony of witnesses, and their credibility, we cannot say that he erred.
Judgment affirmed.